IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,
    Plaintiff,

v.                                            Case No.: 1:23-cr-20036-KMM

DANIELA RENDON,
    Defendant.
_____/

## **DEFENDANT DANIELA RENDON'S SENTENCING MEMORANDUM**

Defendant DANIELA RENDON, by and through the undersigned counsel, hereby submits this Sentencing Memorandum and the attached exhibits for this Honorable Court's consideration. Ms. Rendon respectfully asks this Court to grant a downward variance from her advisory sentencing guidelines and impose a sentence of five years' probation based on the factors found in 18 U.S.C. § 3553(a). Ms. Rendon submits that a five-year probationary term is warranted under the circumstances of this case and sufficient for satisfying the sentencing purposes set forth in § 3553(a).

**I.  PRELIMINARY STATEMENT**

On April 25, 2023, Ms. Rendon pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343 pursuant to a written plea agreement with the Government. The factual circumstances of the offense and the terms of the written plea agreement are sufficiently discussed in Ms. Rendon's Presentence Investigation

Report (PSR) (Doc. 48). Ms. Rendon's sentencing hearing is currently scheduled for August 17, 2023. Ms. Rendon respectfully asks this Court to consider this memorandum and attached exhibits in support of her request for a downward variance sentence of five years' probation.

## II. SENTENCING GUIDELINES CALCULATION

Ms. Rendon's PSR calculates her total offense level as a level 22 with a criminal history category of I (Ms. Rendon has no prior criminal history). As a result, Ms. Rendon is facing an advisory sentencing guidelines range of 41 to 51 months of imprisonment. There are no unresolved objections. There is no minimum mandatory penalty for Ms. Rendon's offense, and the statutory maximum is 20 years' imprisonment.

## III. REQUEST FOR DOWNWARD VARIANCE

For the reasons set forth below, this Court should grant a downward variance sentence based on Ms. Rendon's extraordinary acceptance of responsibility and post-arrest rehabilitative efforts, as well as other relevant factors of 18 U.S.C. § 3553(a). In light of Ms. Rendon's extraordinary acceptance of responsibility, commitment to rehabilitation, overwhelming remorse, dedication to her family and children, and other redeeming character traits, Ms. Rendon respectfully requests that this Court impose a below-guidelines sentence of five-years' probation, which is

sufficient, but not greater than necessary, to comply with the requirements of 18 U.S.C. § 3553(a).

### a) The Post-Booker Sentencing Framework

In the wake of *United States v. Booker*, 543 U.S. 220 (2005), the Federal Sentencing Guidelines are advisory only. Judges now have the power to impose sentences that are *no greater than necessary* to satisfy the statutory purposes of sentencing, to consider all of the characteristics of the offender and circumstances of the offense, and to reject advisory guidelines that are not based on national sentencing data and empirical research. *See Booker*, 543 U.S. 220; *Rita v. United States*, 127 S.Ct. 2456 (2007); *Gall v. United States*, 552 U.S. 38, 50 (2007); *Kimbrough v. United States*, 128 S.Ct. 558 (2007).

A district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," but the court "*may not* presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007) (emphasis added). A district court has the discretion to conclude that the resulting advisory range "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Kimbrough*, 128 S.Ct. at 575 (2007). Though this Court is required to consider the factors under 18 U.S.C. § 3553(a) set forth below, it need not accept the "utter travesty of justice that sometimes results from the Guidelines' fetish with abstract arithmetic." *United States v. Adelson*, 441 F.

3

Supp. 2d 506 (S.D.N.Y. 2006).

Put differently, after *Booker*, this Court is unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. at 53 (quoting *Koon v. United States*, 518 U.S. 81 (1996)). In fact, the use of the Guidelines in any manner other than an advisory function violates the defendant's Sixth Amendment rights. *Booker*, 543 U.S. at 244-45 (Part Two, Breyer, J.).

### b) This Court should grant a downward variance sentence based on Ms. Rendon's extraordinary acceptance of responsibility and post-arrest rehabilitative efforts.

When fashioning a sentence, a district court may consider relevant post-offense conduct. *See Gall*, 552 U.S. at 600. Thus, a sentencing court can grant a downward variance in cases of "extraordinary" acceptance of responsibility, even where a defendant has already received credit for acceptance of responsibility pursuant to USSG § 3E1.1. *See E.g., United States v. Gardellini*, 545 F.3d 1089, 1095 (D.C. Cir. 2008) (district court properly imposed a below-guidelines sentence of probation in part because defendant "cooperated with authorities and accepted responsibility for his crimes to an extraordinary degree"); *United States v. Brown*, 985 F.2d 478, 482-83 (9th Cir. 1993) (sentencing court can depart downward from the guidelines range if it determines that the two-point reduction did not adequately

4

reflect acceptance of responsibility); *United States v. Milne*, 384 F. Supp. 2d 1309, 1312 (E.D. Wis. 2005).

For instance, in *United States v. Milne*, a bank fraud case, the district court recognized that Sentencing Commission promulgated USSG § 5K2.0(d)(2) to prohibit downward departures for acceptance of responsibility beyond those available under USSG § 3E1.1. *Id.* Nevertheless, the court concluded that an additional downward variance was warranted on the facts of the case and reasoned as follows:

> Where appropriate, courts may grant additional consideration to defendants who demonstrate acceptance beyond that necessary to obtain a two or three level reduction under § 3E1.1. This is so because such conduct bears directly on their character, § 3553(a)(1), and on how severe a sentence is necessary to provide deterrence and punishment, § 3553(a)(2). Further, courts should encourage offenders to mitigate their misconduct voluntarily, whether by admitting it, paying restitution or making efforts to address substance abuse, mental health or other problems that contributed to it.

*Id.* at 1312.

Other courts have reached similar conclusions. *United States v. Smith*, 311 F. Supp. 2d 801 (E.D. Wis. 2004) (two-level downward departure granted even though defendant also received offense level reduction for acceptance of responsibility, where defendant demonstrated self-improvement, fundamental change in attitude, and complete withdrawal from criminal drug distribution lifestyle in three years before he was arrested and before he knew he was under investigation); *see also*

*United States v. Kim*, 364 F.3d 1235 (11th Cir. 2004) (payment of $280,000 restitution by defendants, a husband and wife, after they pled guilty was extraordinary enough to justify downward departure from 24 months to probation and home detention because defendants' conduct demonstrated their sincere remorse and acceptance of responsibility).

In the instant case, Ms. Rendon has expressed sincere remorse for her criminal conduct and the long-reaching effects that it had on society during a time of unprecedented hardship. In her written statement to the Court, Ms. Rendon reflects on how her covid-relief fraud directly affected struggling businesses and employees by removing an opportunity for them to seek legitimately needed assistance. *See* Exhibit 1, *Statement of Daniela Rendon*. She further expressed her intention to atone for her crime and repay society for the harm she caused . *Id.*

Ms. Rendon has undertaken substantial efforts to thoroughly understand the impact of her crime and how it contributed to the various hardships that everyday hardworking Americans endured during the Covid-19 pandemic. Ms. Rendon spent considerable time researching and educating herself on the pandemic's effects on society as well as the intended purpose of Covid-19 economic relief programs. Ms. Rendon used this information to prepare an extensive "thesis" that examines the impact of Covid-19 and economic relief fraud on society. *See* Exhibit 2, *Impact of Covid-19 by Daniela Rendon*. However, the most significant aspect of Ms. Rendon's

6

rehabilitative efforts is the comprehensive plan that she developed to remedy the harm she caused to society. Ms. Rendon's thesis discusses the plan in detail, and it is summarized as follows:

> In envisioning a brighter future, I have developed a comprehensive plan that involves non-profit organizations and engages charities to make a positive impact during economic and natural disasters. As a real estate agent passionate about community service, I aim to channel my skills toward helping families and businesses affected by crises.
>
> This plan focuses on three key areas: disaster preparedness and response, mental health support, and divorce counseling. By leveraging data-driven strategies, I hope to create a resilient and supportive community that can weather the storms of life.
>
> During times of economic distress and natural disasters, I will actively contribute to non-profit organizations that provide immediate assistance to struggling small businesses and families. Using my real estate experience, I aim to help these businesses find affordable and sustainable solutions to get back on their feet. Additionally, I will work closely with these organizations to identify long-term support mechanisms to prevent similar hardships in the future.

*Id.* at 26.

Ms. Rendon undertook extensive efforts to atone for her crime and has shown genuine remorse. It is apparent from her written statement and thesis that Ms. Rendon fully realizes that her offense was not a victimless crime against the government, but one committed against everyday Americans. Ms. Rendon's post-arrest efforts to rehabilitate herself are a testament to her character and suggests that she is unlikely to engage in future criminal behavior. Because Ms. Rendon's advisory sentencing guidelines calculation does not account for this uncommon and

substantial degree of acceptance of responsibility, this Court should grant a downward variance.

### c) The factors under 18 U.S.C. § 3553(a) weigh in favor of a downward variance from the Sentencing Guidelines Range.

Congress has identified four "purposes" of sentencing: punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2). To achieve these ends, § 3553(a) requires sentencing courts to consider not only the advisory Guidelines range, but also the facts of a specific case through the lens of seven factors, including:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;

2. The need for the sentence imposed—

    a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    b. to afford adequate deterrence to criminal conduct;
    c. to protect the public from further crimes of the defendant; and
    d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. The kinds of sentences available;

4. The kinds of sentence and the sentencing range established . . .;

5. Any pertinent [Sentencing Commission] policy statement . . .;

6. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7. The need to provide restitution to any victims of the offense.

§ 3553(a)(1)-(7).

The relevant statutory factors of § 3553(a), when applied to Ms. Rendon's case, weigh in favor of a downward variance from her advisory sentencing guidelines range.

### *The Nature and Circumstances of the Offense*

Ms. Rendon pled guilty to a serious offense. The severity and extent of her crime cannot be overstated, and she makes no attempt at excusing or minimizing her crime. This Court must consider the nature of Ms. Rendon's crime. However, this Court must also consider a defendant's personal history and redeeming characteristics when fashioning its sentence.

### *The History and Characteristics of Ms. Rendon*

As Judge Rakoff noted in *United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006), the importance of considering a defendant's redeeming characteristics reaches its zenith at the moment the court determines the sentence to be imposed. Examining Ms. Rendon's history and characteristics reveals a life dedicated to serving her family and devotion to her children. *See Letters of Support*, attached as composite Exhibit 3.

Ms. Rendon's letters of support all consistently describe or reference her as an individual who is devoted to her family. Ms. Rendon's older sister, Paula Rendon,

writes the following about her sister:

> As a wife, Daniela is devoted to her home, her husband, and her children. With God as her guiding light, she has built a beautiful household based on respect, love, and reverence. Moreover, Daniela instills in her children the values of respect and kindness, ensuring they grow into respectful individuals.

*See* Ex. 3, *Letter from Paula Rendon*.

Ms. Rendon's sister-in-law, Lady-Patricia Reyes, similarly described Ms. Rendon's dedication to her family:

> As a mother, she places a high value on her kids' health and happiness. She is actively involved in ensuring that her kids have a decent education and are interested in extracurricular activities. She places a strong emphasis on family and instills these values in the kids. She (the family as a whole) spent every Thanksgiving with us up until last year. Also, my niece and nephew spent 3 weeks with me (us) last summer and attended a summer camp (in Massachusetts), they were able to engage with other kids and learn other cultures.

*See* Ex. 3, *Letter from Lady Patricia Reyes*; *see also* Ex. 3, *Letter from Veronica Vallarino-Reyes* ("As a mother, she demonstrates unwavering dedication to her children. I have seen her consistently prioritize their well-being, providing them with a nurturing and supportive environment. Her decision-making skills and involvement in their education and extracurricular activities are commendable.").

The letters of support also describe Ms. Rendon's integrity and positive character traits. *See* Ex. 3, *Letter from Paula Rendon* ("While Daniela may have made mistakes against her nation, she is by no means a danger to humanity. Her heart is filled with love, respect, and understanding for others . . ."); *see also* Ex. 3,

10

*Letter from Veronica Vallarino-Reyes* ("Daniela Rendon is a person of impeccable character, integrity . . ."); *see also* Ex. 1, *Letter from Mabel Pena* ("I can confirm that in the time I have known her, Daniela has been a reliable, trustworthy and decent person.").

In determining Ms. Rendon's sentence, this Court should consider her unwavering commitment to her family, particularly her dedication to her children, and her positive character traits described in her letters of support. These circumstances warrant a downward variance from her applicable sentencing guidelines range.

### *The Need for the Sentence Imposed*

(a) <u>To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense</u>

The Court must impose a sentence that reflects the seriousness of the offense, promotes respect for law and affords adequate deterrence to protect the public from similar conduct on the part of others. 18 U.S.C. § 3553(a). Ms. Rendon respectfully submits that a sentence of five-years' probation is significant and satisfies these requirements under the circumstances of this case.

(b) <u>To afford adequate deterrence to criminal conduct</u>

Although § 3553(a) requires the Court to consider the need for deterrence, studies have shown that there is little to no evidence that supports the notion that a harsher sentence would have any deterrent effect. *See* David Weisburd et al., *Specific*

11

*Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 CRIMINOLOGY 587 (1995); Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 CARDOZO J. CONFLICT RESOL. 421, 448-49 (2007) ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."). Indeed, these studies demonstrate that the deterrent effect of these ever-longer sentences for white collar crime has been minimal. *Id*.

The theory of general deterrence is based on the flawed premise that lengthy prison sentences deter crime. Over the years, this flawed premise has resulted in the mass incarceration of individuals in the United States. Dr. Oliver Roeder et al., *What Caused the Crime Decline*?, Brennan Center for Just., 22-23 (Feb. 12, 2015), *available at* https://www.brennancenter. org/publication/what-caused-crime-decline. Despite this mass incarceration, studies have shown no correlation between punishment and reductions in crime. *See id.* Finally, in imposing "just punishment" for an offense, the Court should not disregard the additional penalties and hardships that will accompany a felony conviction.

Ms. Rendon submits that a sentence of imprisonment is unnecessary, as the foregoing information suggests that it would have not have any deterring effect on crime.

(c) <u>To protect the public from further crimes of the defendant</u>

Ms. Rendon poses a low risk of recidivism based on her lack of prior criminal history, genuine remorse, post-arrest rehabilitative efforts, and absence of incidents while on supervised pretrial release. As such, a sentence of incarceration is unnecessary and would not have any greater specific deterrence effect.

***The Need to Provide Restitution to Any Victims of the Offense.***

Restitution will be ordered and owed to the Small Business Administration in the amount of $198,990. Ms. Rendon has indicated that she will diligently make restitution payments and attempt to pay the amount off as quickly as she can. A probationary sentence will enable Ms. Rendon to prioritize paying off this restitution.

## **CONCLUSION**

Based on the foregoing reasons, Ms. Rendon respectfully requests that this Court grant a downward variance and impose a sentence of five years' probation, which is sufficient, but not greater than necessary, to comply with the requirements of 18 U.S.C. § 3553(a).

Respectfully submitted,

<u>/s/ Asad Ali</u>
Asad Ali, Esq.
Florida Bar No. 111887
Robert I. Mandell, Esq.
Florida Bar No. 15484

Mandell Law, P.A.
189 S. Orange Ave., Ste. 810
Orlando, FL 32801
Phone: (407) 956-1180
aali@fightforyou.org
rmandell@fightforyou.org
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all parties in this case.

*/s/ Asad Ali*
Asad Ali, Esq.
Florida Bar No. 111887