```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                           (MIAMI DIVISION)

                    CASE NO.  1:23-CR-20036-KMM-1


UNITED STATES OF AMERICA,            Miami, Florida

       PLAINTIFF,
                                     August 17, 2023
    VS.                              Thursday

DANIELA RENDON,
                                     Scheduled for 2:00 p.m.
       DEFENDANT.                    2:17 p.m. to 2:37 p.m.


                                     Pages 1 - 19
---------------------------------------------------------------

                         SENTENCING HEARING


              BEFORE THE HONORABLE K. MICHAEL MOORE
                   UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE GOVERNMENT:           JONATHAN BAILYN, AUSA
                              U.S. Attorney's Office
                              99 Northeast 4th Street
                              Miami, Florida  33132


FOR THE DEFENDANT:            ROBERT IAN MANDELL, ESQ.
                              ASAD ALI, ESQ.
                              MANDELL LAW, P.A.
                              189 S. Orange Avenue
                              Suite 810
                              Orlando, Florida  32801

STENOGRAPHICALLY
REPORTED BY:                  GLENDA M. POWERS, RPR, CRR, FPR
                              Official "Relief" Court Reporter
                              Glenda_Powers@flsd.uscourts.gov
```

1  (Call to the order of the Court:)
2  COURTROOM DEPUTY: Calling Case Number 23-CR-20036, the
3 United States America versus Daniela Rendon.
4  Counsel, please state your appearances, beginning with
5 the Government.
6  MR. BAILYN: Good afternoon, Your Honor.
7  Assistant U.S. Attorney Jonathan Bailyn on behalf of
8 the United States.
9  THE COURT: Good afternoon.
10  MR. MANDELL: Good afternoon, Your Honor.
11  Robert Mandell with co-counsel Asad Ali. We have
12 Daniela Rendon.
13  MR. ALI: Good afternoon, Your Honor.
14  THE COURT: Good afternoon. Okay. We're here for
15 sentencing. I don't believe I recall seeing any objections to
16 the presentence investigation report; is that correct?
17  MR. MANDELL: That's correct, Your Honor.
18  MR. BAILYN: Yes, Your Honor.
19  THE COURT: The probation office has calculated offense
20 level of 22 with a criminal history of 1, and a guideline range
21 of 41 to 51 months; is that a correct calculation of the
22 guidelines?
23  MR. BAILYN: That's correct, from the Government's
24 perspective, Your Honor.
25  MR. MANDELL: That's correct, Your Honor.

```
 1              THE COURT:  Ms. Rendon, do you want to say anything on
 2   your own behalf before sentence is imposed?
 3              MR. MANDELL:  Your Honor, Ms. Rendon had provided a
 4   statement to the Court now on comprehensive memorandum, she'd
 5   like to read that to the Court.
 6              THE COURT:  Okay.
 7              THE DEFENDANT:  Good afternoon, Your Honor.
 8              "Initially, comprehending the full weight of the
 9   consequences tied to the accusations and convictions against me
10   was a daunting task.  Looking back, it becomes all too tempting
11   to utter the words "everybody was doing it" as a feeble attempt
12   to rationalize my actions.
13              "I regretfully confess that I once foolishly believed
14   that the victims of my crimes were merely the faceless entities
15   of the U.S. Government.  However, through profound
16   introspection and earnest discussions, I have come to a
17   poignant realization.
18              "It is not the Government or its officials who bear the
19   true burden of my transgressions, but rather the countless
20   individuals and businesses whose lives were marred by lost
21   opportunities.
22              "The funds I received were originally intended to aid
23   struggling small businesses during an unparalleled period of
24   economic distress caused by the relentless grip of COVID.  The
25   aftermath was catastrophic -- a domino effect that shuttered
```

enterprises, deprived individuals of employment, eroded their sources of income, and ultimately led to the heartbreaking loss of homes.  The repercussions were immeasurable, leaving people displaced and their lives irreparably shattered.  The depth of their suffering weighs heavily on my conscience.

"As a woman who holds a deep reverence for God, acknowledging that I wrongfully took from those who genuinely needed assistance is an indescribable source of shame, embarrassment, and profound guilt.

"It torments me to the point where carrying out even the simplest daily tasks becomes an arduous struggle.  The awareness of my actions fills me with profound anguish and leaves me perpetually stunned.  This behavior is not indicative of the values instilled in me during my upbringing.  Therefore, I solemnly pledge to take every necessary step to atone for my debt to society.

"Words fail to adequately express the depths of my remorse and sorrow.  I implore the Government to understand the genuine sincerity behind my apology.  The magnitude of my wrongdoing serves as a grievous example that my own children should never follow.  My actions were motivated by insatiable greed, but I am steadfast in my commitment to spend the remainder of my life tirelessly seeking redemption.

"May my earnest efforts speak volumes, for the pain I have caused is immeasurable.  With a heavy heart, I vow to

dedicate myself to mending the lives I have shattered and restoring the faith of those I have betrayed."

THE COURT: Thank you. Anything on her behalf?

MR. MANDELL: Yes, Your Honor, just a few brief points and argument on behalf of Ms. Rendon.

First, this is not quite unique, but this is a case where we deal with actual loss versus intended loss, and her guideline range, although appropriate and correct, would be weighed different if we calculated the actual loss in this case.

The actual loss in this case is less than 10 percent of the amount that's calculated in the PSR for the intended loss, which is 4.4 million. What also sets Ms. Rendon apart in this is that the bulk of the loss, more than 90 percent of it, was sent with e-mails that were sent in reconsideration of loans that were denied.

Now, although this is illegal conduct, it is different from somebody who actually receives 4.4 million dollars and then squanders the money, as opposed to this case, where Ms. Rendon received $394,000, which would be significantly less in the guideline range than the intended loss of 4.4 million.

I think also we need to look at the difference between people who are -- and what their roles are in these schemes to defraud. You have people that recruit individuals that are attributed or given the whole amount on their PSR, as if they

```
 1    recruited 4.4 million dollars' worth of people.
 2              Ms. Rendon was an individual that was recruited.
 3              Now, this is not to diminish her responsibility or her
 4    conduct at all.  This is egregious conduct.  And, in fact,
 5    Ms. Rendon is one of the few people -- and I've done these
 6    cases all over the country at this point -- and she is the only
 7    person who came up with the idea where she came to me, and
 8    after we had a meeting, and said, Do you know what, I
 9    understand who the actual victims of these crimes are.
10              Typically, I sit down with people, and it's -- you
11    know, well, it's just the Government, it's just the Government.
12    And it takes explaining to clients and defendants that, No,
13    it's not just the Government that you are taking from.  It's
14    the people, the small business owners that lost opportunities
15    because this money was earmarked for them.
16              Once Ms. Rendon understood that -- as you can see in
17    our comprehensive sentencing memorandum -- Exhibit 2, she took
18    it upon herself to write a 30-page - what I would call thesis,
19    okay, to let the Court know and show that she understands not
20    just the impacts of the fraud of the Cares Act, okay, but the
21    impacts of COVID.
22              How her taking this money could have led -- or caused a
23    ripple effect and could have led to somebody who owned a mom
24    and pop store in the Midwest and losing that store, leading to
25    divorce, leading to suicide.  There were all types of
```

1   ramifications and consequences that came from this fraudulent
2   conduct, and she understands that, and she is one of the few
3   people that actually understands that.
4          She did not mention it in her statement, but one of the
5   things that we spoke about in her thesis, Ms. Rendon is a
6   licensed real estate agent and she does have some influence in
7   the community.  As you can see, she has many people, family and
8   members of the community, here today as well.
9          What she vows to do at this point -- understanding the
10  impact of the COVID and natural disasters, and things of this,
11  such that she wants to use her influence, her expertise in
12  housing and the contacts that she has to create a
13  not-for-profit to help remedy people that she may have
14  affected, people that may be in those situations in the future.
15         I think that Ms. Rendon is sincere, she is genuine.
16  And like I said, she has worked tirelessly on that thesis, and
17  that is something that I've never seen from a defendant before,
18  to educate themselves on what they did, understanding, and
19  present it to the Court.  So we would be asking for a downward
20  variance, Your Honor.
21         THE COURT:  Thank you.
22         Anything from the Government?
23         MR. BAILYN:  Your Honor, the Government is seeking a
24  sentence at the low end of the sentencing guidelines in this
25  case.  The reason we're seeking a sentence at the low end of

```
 1   the guidelines is because the defendant did plead guilty.  That
 2   does save a significant amount of Government resources.
 3          These cases are also very difficult to try.
 4          The reason is that many of these participating lenders
 5   are no longer in business.  It is difficult to procure
 6   witnesses.  So the Government does have a genuine appreciation
 7   for the Defendant's acceptance of responsibility and her plea
 8   of guilty.
 9          I also agree with defense counsel that the intended
10   loss in this case is quite larger than the actual loss that was
11   suffered.  That said, I completely disagree with the motion for
12   a downward variance that seeks five years' probation.
13          I've canvassed all the sentencings for COVID relief
14   fraud in the Southern District of Florida, and I could find no
15   case in which a defendant was sentenced to such a lenient
16   punishment.  That includes cases in which the defendants were
17   given reduction in sentences because of substantial assistance.
18          I also take issue with the argument the defendant was
19   recruited.  This is a two-year long scheme, and the defendant
20   was the person at the center of it.  I've had the unenviable
21   task of reading every social media message and every e-mail
22   that the defendant sent from 2020 to 2022, and it was she that
23   was the one that was seeking these loans.
24          She repeatedly e-mailed the SBA, manufacturing facts
25   about her business, claiming that she was loaning money from
```

one entity to another, where none of these entities existed.

Moreover, none of these entities had ever paid taxes.

I've spoken with the defendant's accountant, and in writing the defendant's accountant told defendant that what she was doing was potentially fraudulent.

Nevertheless, the defendant persisted.

And she persisted so strongly, Your Honor, that the person that she used to help her apply for those loans is also before Your Honor awaiting sentencing.

That's Andre Warquet (phonetic).  This is the person she sought to help her apply for these fraudulent loans.

Your Honor, the amount of COVID fraud in Southern Florida is astounding.  It is demoralizing.  As an Assistant United States Attorney, I cannot keep up with it.

These crimes need to be punished.  I understand that this argument's the motion for a downward variance, the general deterrence, the policy matter doesn't always work.

But certainly, providing probation to people that have stolen hundreds of thousands of dollars, emergency relief money, from the Government, wouldn't work either.

The Government is seeking a sentence of incarceration in this case.  But yes, we are seeking a sentence at the low end of the guidelines.

MR. MANDELL:  Your Honor, if I may, I just want to correct something that I -- I don't want to act like I was

misrepresenting something to the Court.

THE COURT: Okay.

MR. MANDELL: When I was talking about people who recruit, I meant that she was acting solely on her behalf. This isn't somebody who was recruiting other people and, you know, getting them to do the same thing she was doing.

She sought out Mr. Warquet -- and Mr. Bailyn is correct in that sense, but I didn't want the Court to think I was misrepresenting any facts.

THE COURT: Well, I didn't take it as such.

Well, several points need to be made before the sentence is imposed.

First of all, as you may have heard me mention in the prior sentencing, I do want to recognize those family and friends that are present in court today to show their support.

I always do think it's important, not just to express the Court's appreciation for their being in attendance, because not everyone -- not every defendant has the opportunity -- friends and family have the opportunity to be present, either because of their work or personal circumstances, they can't be present. But I think when they are present, one, they deserve to be recognized; two, I think their presence is not just that they are here, but they are here in support of the defendant.

And I think that is important to see that support, to witness the proceedings, not just now but also when the

defendant is released from incarceration, that she will, hopefully, continue to have the support of friends and family to help her re-integrate herself into society as a law-abiding citizen.

The other point that the defendant mentioned and her attorney mentioned, which I do think is important -- in my experience, it's unusual -- but to make the distinction that this is not simply a crime against the Treasury of the United States. It's easy to see that on the surface in any of the number of various fraud cases -- Government program fraud cases that come before the Court. It's not as easy to see that you're really stealing from your neighbors, your friends, and other citizens. It's their money that goes to the Treasury that makes it possible to have these kind of programs.

And so, yes, the United States is harmed, but it's hard-earned money of taxpayers that are your friends and your neighbors that you stole from, and not everybody recognizes that. And I think to recognize that, along with pleading guilty, is evidence of remorse. There is a -- when we impose a sentence, we fashion a sentence, we use the guidelines for several reasons:

One, they take into account the history and characteristics of the defendant. They take into account the circumstances of the instant offense. With respect to that, whether you use the intended loss or the actual loss, it is

1  still a significant amount of money.
2       This was fraud that was not a single instance.  It was
3  committed over a significant period of time, so it suggests a
4  knowing and intentional disregard of the law over that period
5  of time when she should have known what she was doing wrong --
6  but she was wrong, and she continued to do it.
7       The other factors of the guidelines are to promote
8  respect for law.  Obviously, the Government's pointed out that,
9  for worse, not particularly in the South Florida community, we
10 seem to be a magnet for this type of program fraud and somehow
11 come to believe that since nobody is hurt violently by this
12 that somehow we can do it and get away with it and there should
13 be no serious accountability or consequence to it, and that
14 undermines respect for law.
15      And lastly, we are supposed to take into consideration
16 both specific and general deterrence.
17      With respect to general deterrence, a sentence of
18 incarceration is -- at least in the Court's opinion --
19 necessary.  Anything less than that sends the wrong message to
20 the community.  It suggests that you can do this and there are
21 no real consequences or accountability, and those are the kinds
22 of things that should have been thought of before she made the
23 decision to engage in this kind of fraud.
24      And to do otherwise is to just tell other people that,
25 as I say, they can engage in similar behavior and there will be

1  no accountability for that.  And I, in good conscience, I can't
2  allow that message to be sent to the community-at-large.
3          This was a program that was well-intended.  It was
4  intended to serve for good purpose and she took advantage of
5  it, she exploited it, she benefitted from it, and now she has
6  to be held accountable.
7          So, I've considered each of the 3553(a) factors.
8          I've considered the motion for a variance.  I don't
9  think there's a basis for the motion for a variance, so we'll
10 deny that.
11         The Court has considered the statements of all parties,
12 the presentence report which contains the advisory guidelines
13 and the statutory factors as set forth in Title 18, United
14 States Code, Section 3553(a).
15         It is the finding of the Court the defendant is not
16 able to pay a fine, however, restitution is mandatory.
17         It is the judgment of the Court the Defendant Daniela
18 Rendon is committed to the Bureau of Prisons to be in prison
19 for 41 months as to Count 1.
20         It is further ordered the defendant shall pay
21 restitution in the amount of $198,990.
22         Upon release from imprisonment the defendant shall be
23 placed on supervised release for a term of three years as to
24 Count 1.
25         Within 72 hours from release of the custody from the

1  Bureau of Prisons the defendant shall report in person to the
2  probation office in the district in which the defendant is
3  released.
4          While on supervised release the defendant shall comply
5  with mandatory and standard conditions of supervised release,
6  which include:  Not committing any crimes, being prohibited
7  from possessing a firearm, or other dangerous device, not
8  unlawfully possessing a controlled substance, and cooperating
9  in the collection of DNA.
10          The defendant shall also comply with the following
11  special conditions:  Permissible search, financial disclosure
12  requirement, no new debt restriction, unpaid restitution, fines
13  and special assessments, self-employment restriction as noted
14  in part F of the presentence report.
15          Forfeiture of defendant's right, title and interest in
16  certain properties hereby ordered consistent with the plea
17  agreement.
18          The United States shall submit a proposed order of
19  forfeiture within three days of this proceeding.
20          Now that sentence has been imposed, does the defendant
21  or her counsel object to the Court's finding of fact or to the
22  manner in which sentence was pronounced?
23          MR. MANDELL:  No, Your Honor.
24          THE COURT:  Ms. Rendon, do you understand you a right
25  to appeal the sentence that I've imposed?

1      THE DEFENDANT:  Yes, Your Honor.
2      THE COURT:  We will remand her to the custody of the
3 U.S. Marshal.
4      Anything further?
5      MR. BAILYN:  Your Honor, the Government would move to
6 dismiss the remaining counts.
7      THE COURT:  Be granted.
8      COURTROOM DEPUTY:  All rise.
9      (Proceedings concluded at 2:37 p.m.)

                        C E R T I F I C A T E

  I hereby certify that the foregoing is an

accurate transcription of the

proceedings in the above-entitled matter.

November 4th, 2023

                                S/Glenda M. Powers

                                GLENDA M. POWERS, RPR, CRR, FPR
                                United States District Court
                                400 North Miami Avenue
                                Miami, Florida  33128
                                glenda_powers@flsd.uscourts.gov

| $ |
|---|
| **$198,990** [1] - 13:21 |
| **$394,000** [1] - 5:20 |

| 1 |
|---|
| **1** [4] - 1:10, 2:20, 13:19, 13:24 |
| **10** [1] - 5:11 |
| **17** [1] - 1:6 |
| **18** [1] - 13:13 |
| **189** [1] - 1:21 |
| **19** [1] - 1:10 |
| **1:23-CR-20036-KMM -1** [1] - 1:3 |

| 2 |
|---|
| **2** [1] - 6:17 |
| **2020** [1] - 8:22 |
| **2022** [1] - 8:22 |
| **2023** [2] - 1:6, 15:16 |
| **22** [1] - 2:20 |
| **23-CR-20036** [1] - 2:2 |
| **2:00** [1] - 1:8 |
| **2:17** [1] - 1:9 |
| **2:37** [2] - 1:9, 15:9 |

| 3 |
|---|
| **30-page** [1] - 6:18 |
| **32801** [1] - 1:22 |
| **33128** [1] - 15:20 |
| **33132** [1] - 1:18 |
| **3553(a** [1] - 13:7 |
| **3553(a)** [1] - 13:14 |

| 4 |
|---|
| **4.4** [4] - 5:13, 5:18, 5:21, 6:1 |
| **400** [1] - 15:19 |
| **41** [2] - 2:21, 13:19 |
| **4th** [2] - 1:18, 15:16 |

| 5 |
|---|
| **51** [1] - 2:21 |

| 7 |
|---|
| **72** [1] - 13:25 |

| 8 |
|---|
| **810** [1] - 1:22 |

| 9 |
|---|
| **90** [1] - 5:14 |
| **99** [1] - 1:18 |

| A |
|---|
| **abiding** [1] - 11:3 |
| **able** [1] - 13:16 |
| **above-entitled** [1] - 15:14 |
| **acceptance** [1] - 8:7 |
| **account** [2] - 11:22, 11:23 |
| **accountability** [3] - 12:13, 12:21, 13:1 |
| **accountable** [1] - 13:6 |
| **accountant** [2] - 9:3, 9:4 |
| **accurate** [1] - 15:13 |
| **accusations** [1] - 3:9 |
| **acknowledging** [1] - 4:7 |
| **Act** [1] - 6:20 |
| **act** [1] - 9:25 |
| **acting** [1] - 10:4 |
| **actions** [3] - 3:12, 4:12, 4:21 |
| **actual** [6] - 5:7, 5:9, 5:11, 6:9, 8:10, 11:25 |
| **adequately** [1] - 4:17 |
| **advantage** [1] - 13:4 |
| **advisory** [1] - 13:12 |
| **affected** [1] - 7:14 |
| **aftermath** [1] - 3:25 |
| **afternoon** [6] - 2:6, 2:9, 2:10, 2:13, 2:14, 3:7 |
| **agent** [1] - 7:6 |
| **agree** [1] - 8:9 |
| **agreement** [1] - 14:17 |
| **aid** [1] - 3:22 |
| **ALI** [2] - 1:20, 2:13 |
| **Ali** [1] - 2:11 |
| **allow** [1] - 13:2 |
| **AMERICA** [1] - 1:5 |
| **America** [1] - 2:3 |
| **amount** [6] - 5:12, 5:25, 8:2, 9:12, 12:1, 13:21 |
| **Andre** [1] - 9:10 |
| **anguish** [1] - 4:12 |
| **apart** [1] - 5:13 |
| **apology** [1] - 4:19 |
| **appeal** [1] - 14:25 |
| **appearances** [1] - 2:4 |
| **APPEARANCES** [1] - 1:15 |
| **apply** [2] - 9:8, 9:11 |
| **appreciation** [2] - 8:6, 10:17 |
| **appropriate** [1] - 5:8 |
| **arduous** [1] - 4:11 |
| **argument** [2] - 5:5, 8:18 |
| **argument's** [1] - 9:16 |
| **ASAD** [1] - 1:20 |
| **Asad** [1] - 2:11 |
| **assessments** [1] - 14:13 |
| **assistance** [2] - 4:8, 8:17 |
| **Assistant** [2] - 2:7, 9:13 |
| **astounding** [1] - 9:13 |
| **atone** [1] - 4:15 |
| **attempt** [1] - 3:11 |
| **attendance** [1] - 10:17 |
| **Attorney** [2] - 2:7, 9:14 |
| **attorney** [1] - 11:6 |
| **Attorney's** [1] - 1:17 |
| **attributed** [1] - 5:25 |
| **august** [1] - 1:6 |
| **AUSA** [1] - 1:17 |
| **Avenue** [2] - 1:21, 15:19 |
| **awaiting** [1] - 9:9 |
| **awareness** [1] - 4:12 |

| B |
|---|
| **Bailyn** [2] - 2:7, 10:7 |
| **BAILYN** [6] - 1:17, 2:6, 2:18, 2:23, 7:23, 15:5 |
| **basis** [1] - 13:9 |
| **bear** [1] - 3:18 |
| **becomes** [2] - 3:10, 4:11 |
| **BEFORE** [1] - 1:13 |
| **beginning** [1] - 2:4 |
| **behalf** [5] - 2:7, 3:2, 5:3, 5:5, 10:4 |
| **behavior** [2] - 4:13, 12:25 |
| **behind** [1] - 4:19 |
| **benefitted** [1] - 13:5 |
| **betrayed** [1] - 5:2 |
| **between** [1] - 5:22 |
| **brief** [1] - 5:4 |
| **bulk** [1] - 5:14 |
| **burden** [1] - 3:19 |
| **Bureau** [2] - 13:18, 14:1 |
| **business** [3] - 6:14, 8:5, 8:25 |
| **businesses** [2] - 3:20, 3:23 |
| **BY** [1] - 1:24 |

| C |
|---|
| **calculated** [3] - 2:19, 5:9, 5:12 |
| **calculation** [1] - 2:21 |
| **cannot** [1] - 9:14 |
| **canvassed** [1] - 8:13 |
| **Cares** [1] - 6:20 |
| **carrying** [1] - 4:10 |
| **case** [8] - 5:6, 5:10, 5:11, 5:19, 7:25, 8:10, 8:15, 9:22 |
| **Case** [1] - 2:2 |
| **CASE** [1] - 1:3 |
| **cases** [5] - 6:6, 8:3, 8:16, 11:10 |
| **catastrophic** [1] - 3:25 |
| **caused** [3] - 3:24, 4:25, 6:22 |
| **center** [1] - 8:20 |
| **certain** [1] - 14:16 |
| **certainly** [1] - 9:18 |
| **certify** [1] - 15:12 |
| **characteristics** [1] - 11:23 |
| **children** [1] - 4:20 |
| **circumstances** [2] - 10:20, 11:24 |
| **citizen** [1] - 11:4 |
| **citizens** [1] - 11:13 |
| **claiming** [1] - 8:25 |
| **clients** [1] - 6:12 |
| **co** [1] - 2:11 |
| **co-counsel** [1] - 2:11 |
| **Code** [1] - 13:14 |
| **collection** [1] - 14:9 |
| **commitment** [1] - 4:22 |
| **committed** [2] - 12:3, 13:18 |
| **committing** [1] - 14:6 |
| **community** [5] - 7:7, 7:8, 12:9, 12:20, 13:2 |
| **community-at-large** [1] - 13:2 |
| **completely** [1] - 8:11 |
| **comply** [2] - 14:4, 14:10 |
| **comprehending** [1] - 3:8 |
| **comprehensive** [2] - 3:4, 6:17 |
| **concluded** [1] - 15:9 |
| **conditions** [2] - 14:5, 14:11 |
| **conduct** [4] - 5:17, 6:4, 7:2 |
| **confess** [1] - 3:13 |
| **conscience** [2] - 4:5, 13:1 |
| **consequence** [1] - 12:13 |
| **consequences** [3] - 3:9, 7:1, 12:21 |
| **consideration** [1] - 12:15 |
| **considered** [3] - 13:7, 13:8, 13:11 |
| **consistent** [1] - 14:16 |
| **contacts** [1] - 7:12 |
| **contains** [1] - 13:12 |
| **continue** [1] - 11:2 |
| **continued** [1] - 12:6 |
| **controlled** [1] - 14:8 |
| **convictions** [1] - 3:9 |
| **cooperating** [1] - 14:8 |
| **correct** [8] - 2:16, 2:17, 2:21, 2:23, 2:25, 5:8, 9:25, 10:7 |
| **counsel** [4] - 2:4, 2:11, 8:9, 14:21 |
| **Count** [2] - 13:19, 13:24 |
| **countless** [1] - 3:19 |
| **country** [1] - 6:6 |
| **counts** [1] - 15:6 |
| **court** [1] - 10:15 |
| **COURT** [13] - 1:1, 2:9, 2:14, 2:19, 3:1, 3:6, 5:3, 7:21, 10:2, 10:10, 14:24, 15:2, 15:7 |
| **Court** [13] - 1:24, 2:1, 3:4, 3:5, 6:19, 7:19, 10:1, 10:8, 11:11, 13:11, 13:15, 13:17, 15:19 |
| **Court's** [3] - 10:17, 12:18, 14:21 |
| **COURTROOM** [2] - 2:2, 15:8 |
| **COVID** [5] - 3:24, 6:21, 7:10, 8:13, 9:12 |
| **create** [1] - 7:12 |
| **crime** [1] - 11:8 |
| **crimes** [4] - 3:14, 6:9, 9:15, 14:6 |
| **criminal** [1] - 2:20 |
| **CRR** [2] - 1:24, 15:18 |
| **custody** [2] - 13:25, 15:2 |

| D |
|---|
| **daily** [1] - 4:11 |
| **dangerous** [1] - 14:7 |
| **DANIELA** [1] - 1:8 |

**Daniela** [3] - 2:3, 2:12, 13:17
**daunting** [1] - 3:10
**days** [1] - 14:19
**deal** [1] - 5:7
**debt** [2] - 4:16, 14:12
**decision** [1] - 12:23
**dedicate** [1] - 5:1
**deep** [1] - 4:6
**defendant** [21] - 7:17, 8:1, 8:15, 8:18, 8:19, 8:22, 9:4, 9:6, 10:18, 10:23, 11:1, 11:5, 11:23, 13:15, 13:20, 13:22, 14:1, 14:2, 14:4, 14:10, 14:20
**Defendant** [1] - 13:17
**DEFENDANT** [4] - 1:9, 1:20, 3:7, 15:1
**defendant's** [3] - 9:3, 9:4, 14:15
**Defendant's** [1] - 8:7
**defendants** [2] - 6:12, 8:16
**defense** [1] - 8:9
**defraud** [1] - 5:24
**demoralizing** [1] - 9:13
**denied** [1] - 5:16
**deny** [1] - 13:10
**deprived** [1] - 4:1
**depth** [1] - 4:4
**depths** [1] - 4:17
**DEPUTY** [2] - 2:2, 15:8
**deserve** [1] - 10:21
**deterrence** [3] - 9:17, 12:16, 12:17
**device** [1] - 14:7
**difference** [1] - 5:22
**different** [2] - 5:9, 5:17
**difficult** [2] - 8:3, 8:5
**diminish** [1] - 6:3
**disagree** [1] - 8:11
**disasters** [1] - 7:10
**disclosure** [1] - 14:11
**discussions** [1] - 3:16
**dismiss** [1] - 15:6
**displaced** [1] - 4:4
**disregard** [1] - 12:4
**distinction** [1] - 11:7
**distress** [1] - 3:24
**DISTRICT** [3] - 1:1, 1:1, 1:14
**District** [2] - 8:14, 15:19
**district** [1] - 14:2
**DIVISION** [1] - 1:2
**divorce** [1] - 6:25
**DNA** [1] - 14:9

**dollars** [2] - 5:18, 9:19
**dollars'** [1] - 6:1
**domino** [1] - 3:25
**done** [1] - 6:5
**down** [1] - 6:10
**downward** [3] - 7:19, 8:12, 9:16
**during** [2] - 3:23, 4:14

**E**

**e-mail** [1] - 8:21
**e-mailed** [1] - 8:24
**e-mails** [1] - 5:15
**earmarked** [1] - 6:15
**earned** [1] - 11:16
**earnest** [2] - 3:16, 4:24
**easy** [2] - 11:9, 11:11
**economic** [1] - 3:24
**educate** [1] - 7:18
**effect** [2] - 3:25, 6:23
**efforts** [1] - 4:24
**egregious** [1] - 6:4
**either** [2] - 9:20, 10:19
**embarrassment** [1] - 4:9
**emergency** [1] - 9:19
**employment** [2] - 4:1, 14:13
**end** [3] - 7:24, 7:25, 9:23
**engage** [2] - 12:23, 12:25
**enterprises** [1] - 4:1
**entities** [3] - 3:14, 9:1, 9:2
**entitled** [1] - 15:14
**entity** [1] - 9:1
**eroded** [1] - 4:1
**ESQ** [2] - 1:20, 1:20
**estate** [1] - 7:6
**evidence** [1] - 11:19
**example** [1] - 4:20
**Exhibit** [1] - 6:17
**existed** [1] - 9:1
**experience** [1] - 11:7
**expertise** [1] - 7:11
**explaining** [1] - 6:12
**exploited** [1] - 13:5
**express** [2] - 4:17, 10:16

**F**

**faceless** [1] - 3:14
**fact** [2] - 6:4, 14:21
**factors** [3] - 12:7, 13:7, 13:13
**facts** [2] - 8:24, 10:9

**fail** [1] - 4:17
**faith** [1] - 5:2
**family** [4] - 7:7, 10:14, 10:19, 11:2
**fashion** [1] - 11:20
**feeble** [1] - 3:11
**few** [3] - 5:4, 6:5, 7:2
**fills** [1] - 4:12
**financial** [1] - 14:11
**fine** [1] - 13:16
**fines** [1] - 14:12
**firearm** [1] - 14:7
**first** [2] - 5:6, 10:13
**five** [1] - 8:12
**FLORIDA** [1] - 1:1
**Florida** [7] - 1:5, 1:18, 1:22, 8:14, 9:13, 12:9, 15:20
**follow** [1] - 4:21
**following** [1] - 14:10
**foolishly** [1] - 3:13
**FOR** [2] - 1:17, 1:20
**foregoing** [1] - 15:12
**forfeiture** [2] - 14:15, 14:19
**forth** [1] - 13:13
**FPR** [2] - 1:24, 15:18
**fraud** [8] - 6:20, 8:14, 9:12, 11:10, 12:2, 12:10, 12:23
**fraudulent** [3] - 7:1, 9:5, 9:11
**friends** [5] - 10:15, 10:19, 11:2, 11:12, 11:16
**full** [1] - 3:8
**funds** [1] - 3:22
**future** [1] - 7:14

**G**

**general** [3] - 9:16, 12:16, 12:17
**genuine** [3] - 4:19, 7:15, 8:6
**genuinely** [1] - 4:7
**given** [2] - 5:25, 8:17
**GLENDA** [2] - 1:24, 15:18
**glenda_powers@ flsd.uscourts.gov** [2] - 1:25, 15:20
**God** [1] - 4:6
**GOVERNMENT** [1] - 1:17
**Government** [15] - 2:5, 3:15, 3:18, 4:18, 6:11, 6:13, 7:22, 7:23, 8:2, 8:6, 9:20, 9:21, 11:10, 15:5

**Government's** [2] - 2:23, 12:8
**granted** [1] - 15:7
**greed** [1] - 4:22
**grievous** [1] - 4:20
**grip** [1] - 3:24
**guideline** [3] - 2:20, 5:8, 5:21
**guidelines** [7] - 2:22, 7:24, 8:1, 9:23, 11:20, 12:7, 13:12
**guilt** [1] - 4:9
**guilty** [3] - 8:1, 8:8, 11:19

**H**

**hard** [1] - 11:16
**hard-earned** [1] - 11:16
**harmed** [1] - 11:15
**heard** [1] - 10:13
**HEARING** [1] - 1:12
**heart** [1] - 4:25
**heartbreaking** [1] - 4:2
**heavily** [1] - 4:5
**heavy** [1] - 4:25
**held** [1] - 13:6
**help** [4] - 7:13, 9:8, 9:11, 11:3
**hereby** [2] - 14:16, 15:12
**herself** [2] - 6:18, 11:3
**history** [2] - 2:20, 11:22
**holds** [1] - 4:6
**homes** [1] - 4:3
**Honor** [19] - 2:6, 2:10, 2:13, 2:17, 2:18, 2:24, 2:25, 3:3, 3:7, 5:4, 7:20, 7:23, 9:7, 9:9, 9:12, 9:24, 14:23, 15:1, 15:5
**HONORABLE** [1] - 1:13
**hopefully** [1] - 11:2
**hours** [1] - 13:25
**housing** [1] - 7:12
**hundreds** [1] - 9:19
**hurt** [1] - 12:11

**I**

**IAN** [1] - 1:20
**idea** [1] - 6:7
**illegal** [1] - 5:17
**immeasurable** [2] - 4:3, 4:25
**impact** [1] - 7:10

**impacts** [2] - 6:20, 6:21
**implore** [1] - 4:18
**important** [3] - 10:16, 10:24, 11:6
**impose** [1] - 11:19
**imposed** [4] - 3:2, 10:12, 14:20, 14:25
**imprisonment** [1] - 13:22
**incarceration** [3] - 9:21, 11:1, 12:18
**include** [1] - 14:6
**includes** [1] - 8:16
**income** [1] - 4:2
**indescribable** [1] - 4:8
**indicative** [1] - 4:13
**individual** [1] - 6:2
**individuals** [3] - 3:20, 4:1, 5:24
**influence** [2] - 7:6, 7:11
**ing** [1] - 7:23
**insatiable** [1] - 4:21
**instance** [1] - 12:2
**instant** [1] - 11:24
**instilled** [1] - 4:14
**integrate** [1] - 11:3
**intended** [8] - 3:22, 5:7, 5:12, 5:21, 8:9, 11:25, 13:3, 13:4
**intentional** [1] - 12:4
**interest** [1] - 14:15
**introspection** [1] - 3:16
**investigation** [1] - 2:16
**irreparably** [1] - 4:4
**issue** [1] - 8:18

**J**

**Jonathan** [1] - 2:7
**JONATHAN** [1] - 1:17
**JUDGE** [1] - 1:14
**judgment** [1] - 13:17

**K**

**keep** [1] - 9:14
**kind** [2] - 11:14, 12:23
**kinds** [1] - 12:21
**knowing** [1] - 12:4
**known** [1] - 12:5

**L**

**large** [1] - 13:2
**larger** [1] - 8:10
**lastly** [1] - 12:15

**LAW** [1] - 1:21
**law** [4] - 11:3, 12:4, 12:8, 12:14
**law-abiding** [1] - 11:3
**leading** [2] - 6:24, 6:25
**least** [1] - 12:18
**leaves** [1] - 4:13
**leaving** [1] - 4:3
**led** [3] - 4:2, 6:22, 6:23
**lenders** [1] - 8:4
**lenient** [1] - 8:15
**less** [3] - 5:11, 5:20, 12:19
**level** [1] - 2:20
**licensed** [1] - 7:6
**life** [1] - 4:23
**lives** [3] - 3:20, 4:4, 5:1
**loaning** [1] - 8:25
**loans** [4] - 5:15, 8:23, 9:8, 9:11
**look** [1] - 5:22
**looking** [1] - 3:10
**losing** [1] - 6:24
**loss** [12] - 4:2, 5:7, 5:9, 5:11, 5:12, 5:14, 5:21, 8:10, 11:25
**lost** [2] - 3:20, 6:14
**low** [3] - 7:24, 7:25, 9:22

**M**

**magnet** [1] - 12:10
**magnitude** [1] - 4:19
**mail** [1] - 8:21
**mailed** [1] - 8:24
**mails** [1] - 5:15
**mandatory** [2] - 13:16, 14:5
**Mandell** [1] - 2:11
**MANDELL** [10] - 1:20, 1:21, 2:10, 2:17, 2:25, 3:3, 5:4, 9:24, 10:3, 14:23
**manner** [1] - 14:22
**manufacturing** [1] - 8:24
**marred** [1] - 3:20
**Marshal** [1] - 15:3
**matter** [2] - 9:17, 15:14
**meant** [1] - 10:4
**media** [1] - 8:21
**meeting** [1] - 6:8
**members** [1] - 7:8
**memorandum** [2] - 3:4, 6:17
**mending** [1] - 5:1

**mention** [2] - 7:4, 10:13
**mentioned** [2] - 11:5, 11:6
**merely** [1] - 3:14
**message** [3] - 8:21, 12:19, 13:2
**MIAMI** [1] - 1:2
**Miami** [4] - 1:5, 1:18, 15:19, 15:20
**MICHAEL** [1] - 1:13
**Midwest** [1] - 6:24
**million** [4] - 5:13, 5:18, 5:21, 6:1
**misrepresenting** [2] - 10:1, 10:9
**mom** [1] - 6:23
**money** [8] - 5:19, 6:15, 6:22, 8:25, 9:20, 11:13, 11:16, 12:1
**months** [2] - 2:21, 13:19
**MOORE** [1] - 1:13
**moreover** [1] - 9:2
**motion** [4] - 8:11, 9:16, 13:8, 13:9
**motivated** [1] - 4:21
**move** [1] - 15:5
**MR** [14] - 2:6, 2:10, 2:13, 2:17, 2:18, 2:23, 2:25, 3:3, 5:4, 7:23, 9:24, 10:3, 14:23, 15:5

**N**

**natural** [1] - 7:10
**necessary** [2] - 4:15, 12:19
**need** [3] - 5:22, 9:15, 10:11
**needed** [1] - 4:8
**neighbors** [2] - 11:12, 11:17
**never** [2] - 4:21, 7:17
**nevertheless** [1] - 9:6
**new** [1] - 14:12
**NO** [1] - 1:3
**nobody** [1] - 12:11
**none** [2] - 9:1, 9:2
**North** [1] - 15:19
**Northeast** [1] - 1:18
**not-for-profit** [1] - 7:13
**noted** [1] - 14:13
**November** [1] - 15:16
**number** [1] - 11:10
**Number** [1] - 2:2

**O**

**object** [1] - 14:21
**objections** [1] - 2:15
**obviously** [1] - 12:8
**OF** [2] - 1:1, 1:5
**offense** [2] - 2:19, 11:24
**Office** [1] - 1:17
**office** [2] - 2:19, 14:2
**Official** [1] - 1:24
**officials** [1] - 3:18
**once** [2] - 3:13, 6:16
**one** [7] - 6:5, 7:2, 7:4, 8:23, 9:1, 10:21, 11:22
**opinion** [1] - 12:18
**opportunities** [2] - 3:21, 6:14
**opportunity** [2] - 10:18, 10:19
**opposed** [1] - 5:19
**Orange** [1] - 1:21
**order** [2] - 2:1, 14:18
**ordered** [2] - 13:20, 14:16
**originally** [1] - 3:22
**Orlando** [1] - 1:22
**otherwise** [1] - 12:24
**own** [2] - 3:2, 4:20
**owned** [1] - 6:23
**owners** [1] - 6:14

**P**

**P.A** [1] - 1:21
**p.m** [4] - 1:8, 1:9, 15:9
**Pages** [1] - 1:10
**paid** [1] - 9:2
**pain** [1] - 4:24
**part** [1] - 14:14
**participating** [1] - 8:4
**particularly** [1] - 12:9
**parties** [1] - 13:11
**pay** [2] - 13:16, 13:20
**people** [15] - 4:3, 5:23, 5:24, 6:1, 6:5, 6:10, 6:14, 7:3, 7:7, 7:13, 7:14, 9:18, 10:3, 10:5, 12:24
**percent** [2] - 5:11, 5:14
**period** [3] - 3:23, 12:3, 12:4
**permissible** [1] - 14:11
**perpetually** [1] - 4:13
**persisted** [2] - 9:6, 9:7
**person** [5] - 6:7, 8:20, 9:8, 9:10, 14:1
**personal** [1] - 10:20
**perspective** [1] - 2:24
**phonetic)** [1] - 9:10
**placed** [1] - 13:23
**PLAINTIFF** [1] - 1:6
**plea** [2] - 8:7, 14:16
**plead** [1] - 8:1
**pleading** [1] - 11:18
**pledge** [1] - 4:15
**poignant** [1] - 3:17
**point** [4] - 4:10, 6:6, 7:9, 11:5
**pointed** [1] - 12:8
**points** [2] - 5:4, 10:11
**policy** [1] - 9:17
**pop** [1] - 6:24
**possessing** [2] - 14:7, 14:8
**possible** [1] - 11:14
**potentially** [1] - 9:5
**POWERS** [2] - 1:24, 15:18
**Powers** [1] - 15:17
**presence** [1] - 10:22
**present** [5] - 7:19, 10:15, 10:19, 10:21
**presentence** [3] - 2:16, 13:12, 14:14
**prison** [1] - 13:18
**Prisons** [2] - 13:18, 14:1
**probation** [4] - 2:19, 8:12, 9:18, 14:2
**proceeding** [1] - 14:19
**proceedings** [3] - 10:25, 15:9, 15:14
**procure** [1] - 8:5
**profit** [1] - 7:13
**profound** [3] - 3:15, 4:9, 4:12
**program** [3] - 11:10, 12:10, 13:3
**programs** [1] - 11:14
**prohibited** [1] - 14:6
**promote** [1] - 12:7
**pronounced** [1] - 14:22
**properties** [1] - 14:16
**proposed** [1] - 14:18
**provided** [1] - 3:3
**providing** [1] - 9:18
**PSR** [2] - 5:12, 5:25
**punished** [1] - 9:15
**punishment** [1] - 8:16
**purpose** [1] - 13:4

**Q**

**quite** [2] - 5:6, 8:10

**R**

**ramifications** [1] - 7:1
**range** [3] - 2:20, 5:8, 5:21
**rather** [1] - 3:19
**rationalize** [1] - 3:12
**re** [1] - 11:3
**re-integrate** [1] - 11:3
**read** [1] - 3:5
**reading** [1] - 8:21
**real** [2] - 7:6, 12:21
**realization** [1] - 3:17
**really** [1] - 11:12
**reason** [2] - 7:25, 8:4
**reasons** [1] - 11:21
**received** [2] - 3:22, 5:20
**receives** [1] - 5:18
**recognize** [2] - 10:14, 11:18
**recognized** [1] - 10:22
**recognizes** [1] - 11:17
**reconsideration** [1] - 5:15
**recruit** [2] - 5:24, 10:4
**recruited** [3] - 6:1, 6:2, 8:19
**recruiting** [1] - 10:5
**redemption** [1] - 4:23
**reduction** [1] - 8:17
**regretfully** [1] - 3:13
**release** [5] - 13:22, 13:23, 13:25, 14:4, 14:5
**released** [2] - 11:1, 14:3
**relentless** [1] - 3:24
**relief** [2] - 8:13, 9:19
**Relief** [1] - 1:24
**remainder** [1] - 4:23
**remaining** [1] - 15:6
**remand** [1] - 15:2
**remedy** [1] - 7:13
**remorse** [2] - 4:18, 11:19
**Rendon** [14] - 2:3, 2:12, 3:1, 3:3, 5:5, 5:13, 5:20, 6:2, 6:5, 6:16, 7:5, 7:15, 13:18, 14:24
**RENDON** [1] - 1:8
**repeatedly** [1] - 8:24
**repercussions** [1] - 4:3

**report** [4] - 2:16, 13:12, 14:1, 14:14
**REPORTED** [1] - 1:24
**Reporter** [1] - 1:24
**requirement** [1] - 14:12
**resources** [1] - 8:2
**respect** [4] - 11:24, 12:8, 12:14, 12:17
**responsibility** [2] - 6:3, 8:7
**restitution** [3] - 13:16, 13:21, 14:12
**restoring** [1] - 5:2
**restriction** [2] - 14:12, 14:13
**reverence** [1] - 4:6
**ripple** [1] - 6:23
**rise** [1] - 15:8
**ROBERT** [1] - 1:20
**Robert** [1] - 2:11
**roles** [1] - 5:23
**RPR** [2] - 1:24, 15:18

### S

**s/Glenda** [1] - 15:17
**save** [1] - 8:2
**SBA** [1] - 8:24
**Scheduled** [1] - 1:8
**scheme** [1] - 8:19
**schemes** [1] - 5:23
**search** [1] - 14:11
**Section** [1] - 13:14
**see** [5] - 6:16, 7:7, 10:24, 11:9, 11:11
**seeing** [1] - 2:15
**seek** [1] - 7:23
**seeking** [5] - 4:23, 7:25, 8:23, 9:21, 9:22
**seeks** [1] - 8:12
**seem** [1] - 12:10
**self** [1] - 14:13
**self-employment** [1] - 14:13
**sends** [1] - 12:19
**sense** [1] - 10:8
**sent** [4] - 5:15, 8:22, 13:2
**sentence** [12] - 3:2, 7:24, 7:25, 9:21, 9:22, 10:12, 11:20, 12:17, 14:20, 14:22, 14:25
**sentenced** [1] - 8:15
**sentences** [1] - 8:17
**SENTENCING** [1] - 1:12
**sentencing** [5] - 2:15, 6:17, 7:24, 9:9, 10:14
**sentencings** [1] - 8:13
**serious** [1] - 12:13
**serve** [1] - 13:4
**serves** [1] - 4:20
**set** [1] - 13:13
**sets** [1] - 5:13
**several** [2] - 10:11, 11:21
**shall** [6] - 13:20, 13:22, 14:1, 14:4, 14:10, 14:18
**shame** [1] - 4:8
**shattered** [2] - 4:4, 5:1
**show** [2] - 6:19, 10:15
**shuttered** [1] - 3:25
**significant** [3] - 8:2, 12:1, 12:3
**significantly** [1] - 5:20
**similar** [1] - 12:25
**simplest** [1] - 4:11
**simply** [1] - 11:8
**sincere** [1] - 7:15
**sincerity** [1] - 4:19
**single** [1] - 12:2
**sit** [1] - 6:10
**situations** [1] - 7:14
**small** [2] - 3:23, 6:14
**social** [1] - 8:21
**society** [2] - 4:16, 11:3
**solely** [1] - 10:4
**solemnly** [1] - 4:15
**sorrow** [1] - 4:18
**sought** [2] - 9:11, 10:7
**source** [1] - 4:8
**sources** [1] - 4:2
**South** [1] - 12:9
**SOUTHERN** [1] - 1:1
**Southern** [2] - 8:14, 9:12
**special** [2] - 14:11, 14:13
**specific** [1] - 12:16
**spend** [1] - 4:22
**spoken** [1] - 9:3
**squanders** [1] - 5:19
**standard** [1] - 14:5
**state** [1] - 2:4
**statement** [2] - 3:4, 7:4
**statements** [1] - 13:11
**States** [8] - 2:3, 2:8, 9:14, 11:9, 11:15, 13:14, 14:18, 15:19
**STATES** [3] - 1:1, 1:5, 1:14
**statutory** [1] - 13:13
**steadfast** [1] - 4:22
**stealing** [1] - 11:12
**STENOGRAPHICALLY** [1] - 1:23
**step** [1] - 4:15
**still** [1] - 12:1
**stole** [1] - 11:17
**stolen** [1] - 9:19
**store** [2] - 6:24
**Street** [1] - 1:18
**strongly** [1] - 9:7
**struggle** [1] - 4:11
**struggling** [1] - 3:23
**stunned** [1] - 4:13
**submit** [1] - 14:18
**substance** [1] - 14:8
**substantial** [1] - 8:17
**suffered** [1] - 8:11
**suffering** [1] - 4:5
**suggests** [2] - 12:3, 12:20
**suicide** [1] - 6:25
**suite** [1] - 1:22
**supervised** [3] - 13:23, 14:4, 14:5
**support** [4] - 10:15, 10:23, 10:24, 11:2
**supposed** [1] - 12:15
**surface** [1] - 11:9

### T

**task** [2] - 3:10, 8:21
**tasks** [1] - 4:11
**taxes** [1] - 9:2
**taxpayers** [1] - 11:16
**tempting** [1] - 3:10
**term** [1] - 13:23
**THE** [17] - 1:13, 1:17, 1:20, 2:9, 2:14, 2:19, 3:1, 3:6, 3:7, 5:3, 7:21, 10:2, 10:10, 14:24, 15:1, 15:2, 15:7
**themselves** [1] - 7:18
**therefore** [1] - 4:14
**thesis** [3] - 6:18, 7:5, 7:16
**thousands** [1] - 9:19
**three** [2] - 13:23, 14:19
**Thursday** [1] - 1:7
**tied** [1] - 3:9
**tirelessly** [2] - 4:23, 7:16
**Title** [1] - 13:13
**title** [1] - 14:15
**today** [2] - 7:8, 10:15
**took** [3] - 4:7, 6:17, 13:4
**torments** [1] - 4:10
**transcription** [1] - 15:13
**transgressions** [1] - 3:19
**Treasury** [2] - 11:8, 11:13
**true** [1] - 3:19
**try** [1] - 8:3
**two** [2] - 8:19, 10:22
**two-year** [1] - 8:19
**type** [1] - 12:10
**types** [1] - 6:25
**typically** [1] - 6:10

### U

**U.S** [4] - 1:17, 2:7, 3:15, 15:3
**ultimately** [1] - 4:2
**undermines** [1] - 12:14
**understood** [1] - 6:16
**unenviable** [1] - 8:20
**unique** [1] - 5:6
**United** [8] - 2:3, 2:8, 9:14, 11:8, 11:15, 13:13, 14:18, 15:19
**UNITED** [3] - 1:1, 1:5, 1:14
**unlawfully** [1] - 14:8
**unpaid** [1] - 14:12
**unparalleled** [1] - 3:23
**unusual** [1] - 11:7
**up** [2] - 6:7, 9:14
**upbringing** [1] - 4:14
**utter** [1] - 3:11

### V

**values** [1] - 4:14
**variance** [5] - 7:20, 8:12, 9:16, 13:8, 13:9
**various** [1] - 11:10
**versus** [2] - 2:3, 5:7
**victims** [2] - 3:14, 6:9
**violently** [1] - 12:11
**volumes** [1] - 4:24
**vow** [1] - 4:25
**vows** [1] - 7:9
**VS** [1] - 1:7

### W

**wants** [1] - 7:11
**Warquet** [2] - 9:10, 10:7
**weighed** [1] - 5:9
**weighs** [1] - 4:5
**weight** [1] - 3:8
**well-intended** [1] - 13:3
**whole** [1] - 5:25
**witness** [1] - 10:25
**witnesses** [1] - 8:6
**woman** [1] - 4:6
**words** [2] - 3:11, 4:17
**worse** [1] - 12:9
**worth** [1] - 6:1
**write** [1] - 6:18
**writing** [1] - 9:4
**wrongdoing** [1] - 4:20
**wrongfully** [1] - 4:7

### Y

**year** [1] - 8:19
**years** [1] - 13:23
**years'** [1] - 8:12